UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at Covington

| | | |
|---|---|---|
| AUDREY SISSA AKILIMALI, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 2:25-cv-00194-SCM |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| JAMES A. DALEY, et al., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Audrey Sissa Akilimali is a noncitizen who has been detained without bond by the Department of Homeland Security while undergoing removal proceedings. She has filed a petition for a writ of habeas corpus on the ground that it is unlawful for DHS to detain her without a bond hearing. But she is not entitled to a bond hearing. To the contrary, the applicable statutory language provides that she "shall be detained" during removal proceedings. 8 U.S.C. § 1225(b)(2)(A). Accordingly, her habeas petition is denied.

## I.    Facts

The Petitioner, Audrey Sissa Akilimali, is a citizen and national of the Democratic Republic of Congo who came to the United States in 2023. [Dkt. 1 at 3]. She entered the United States through the southern border with Mexico to seek asylum. [*Id.*]. On October 4, 2023, a Border Patrol Agent issued the Petitioner a Notice to Appear charging her with being an alien present in the United States

without having been admitted or paroled. [Dkt. 1-2 at 1]. The Petitioner was released from custody and filed an I-589 Application for Asylum and Withholding of Removal. [Dkt. 1 at 4; Dkt. 7-1]. She attended an initial ICE check-in appointment in 2024. [Dkt. 1 at 4]. On October 23, 2025, the Petitioner attempted to appear at the Broadview ICE office for a second check-in appointment when she was taken into custody pursuant to a Form I-200 warrant for arrest signed by an Immigration Officer. [*See id.* at 5, 8; Dkt. 5-1]. She is currently detained at the Campbell County Detention Center in Newport, Kentucky. [Dkt. 1 at 5–6].

The Petitioner filed her Petition for a Writ of Habeas Corpus on November 20, 2025. [*Id.* at 1]. The Respondents include James Daley as Jailer of the Campbell County Detention Center, Todd M. Lyons as the Acting Director of ICE, Kristi Noem as then-Secretary of DHS, and Pam Bondi as Attorney General. [*Id.* at 2–3]. The Petitioner argues that her detention without bond violates her right to due process under the Fifth Amendment and the plain text of the Immigration and Nationality Act. [*Id.* at 9–10; Dkt. 7 at 4]. According to the Petitioner, her detention is governed by 8 U.S.C. § 1226(a) instead of 8 U.S.C. § 1225(b)(2), meaning she is entitled to a bond hearing. [Dkt. 1 at 7–8]. Thus, she seeks relief through a writ of habeas corpus, which "is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). And she asks this Court to reject *Yajure Hurtado*'s interpretation of the INA, agree with the federal judges who have found that detention like hers is unlawful, and endorse her understanding of the INA. [Dkt. 7 at 11].

## II.   Analysis

This case boils down to one question:  Is the Petitioner's detention governed by 8 U.S.C. § 1225(b)(2), which would preclude her from receiving a bond hearing, or is it governed by 8 U.S.C. § 1226(a), which would allow a bond hearing?[1]

This question has arisen in numerous cases nationwide due to the BIA's determination in 2025 that all aliens who have not been admitted into the country must be detained without bond "unless an immigration officer determines that they are 'clearly and beyond a doubt entitled to be admitted.'"  *Yajure Hurtado*, 29 I. & N. Dec. at 228 (quoting 8 U.S.C. § 1225(b)(2)(A)).  Following that decision, DHS began detaining aliens situated similarly to the Petitioner without bond hearings.  This signaled a shift in practice.  Previously, aliens who were present in the United States without admission and who were apprehended within the United States generally were given a bond hearing pursuant to 8 U.S.C. § 1226(a).  But now, during the Petitioner's present detention, the BIA's more recent interpretation of the INA in *Yajure Hurtado* has prevented her from receiving a bond hearing.  As explained above, the Petitioner argues that her detention without bond is unlawful.  She

---

[1] The Petition itself only asserts the Fifth Amendment right to due process as a basis for relief, [Dkt. 1 at 9–10], but the Petitioner's Reply adds a claim that her detention also violates the Immigration and Nationality Act, [Dkt. 7 at 4].  Thus, the Court could dispose of the Petition solely on due process grounds. *See, e.g.*, *Roark v. Meko*, No. 12-73-KSF, 2013 WL 3107654, at *3 (E.D. Ky. June 17, 2013) (refusing to address claims raised for the first time in a habeas reply brief).  But the Court will nevertheless address both issues because the United States addressed both in its briefing and therefore has not been unfairly deprived of an opportunity to brief the issues regarding the INA. *See Taylor v. Mitchell*, 296 F. Supp. 2d 784, 798 (N.D. Ohio 2003) (addressing claims that were not raised in the habeas petition because the respondent had an opportunity to address them).

believes the prior agency practice reflects the correct interpretation of the INA.  To the contrary, a straightforward application of the plain language of the relevant statute compels the conclusion that she must be detained during her removal proceedings.  Thus, she is not entitled to a bond hearing.  *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *see also Calleja Sebastian v. Olson*, No. 2:25-cv-00167-SCM, 2026 WL 672955 (E.D. Ky. Mar. 10, 2026).

### A. Section 1225(b)(2) applies to the Petitioner, thereby making her subject to mandatory detention.

The two statutes that potentially govern the Petitioner's detention are 8 U.S.C. § 1225(b)(2) and 8 U.S.C. § 1226(a).  In relevant part, § 1225(b)(2)(A) provides:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

And § 1226(a), in relevant part, provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> (1)    may continue to detain the arrested alien; and
>
> (2)    may release the alien on—
>
> (A)    bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>
> (B)    conditional parole . . . .

The scope of the two statutes is obviously different.  Section 1226(a) potentially applies to any alien who is arrested on a warrant issued for removal proceedings.

4

Section 1225(b)(2), however, is narrower. It applies to a smaller subset of aliens who are "applicant[s] for admission." *Id.* § 1225(b)(2). Thus, the key here is determining whether the Petitioner is an "applicant for admission." If so, her detention is governed by § 1225(b)(2). If not, it is governed by § 1226(a), which would allow for a bond hearing.

The term "applicant for admission" is a term of art. It is not limited solely to those aliens who have literally submitted an application for admission. Rather, § 1225(a)(1) specifies that:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

And the term "admitted" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). So an "applicant for admission" is any alien who is either literally applying for admission or else is present in the United States without having received permission to be here.

In this case, the Petitioner is unquestionably deemed an "applicant for admission" under § 1225(a)(1) because she entered the United States without admission after an inspection by a Border Patrol Agent. [*See* Dkt. 1 at 3–4]. This point is dispositive. Because she is an "applicant for admission," § 1225(b)(2)(A) requires that she "shall be detained" during her removal proceedings if an immigration officer determines that she is "not clearly and beyond a doubt entitled to be admitted." And the record makes clear that this has happened here. Under the

5

INA, an immigration officer is "any employee or class of employees of the [INS] or of the United States designated by the Attorney General . . . to perform the functions of an immigration officer." 8 U.S.C. § 1101(a)(18); *see also Montoya Cabanas v. Bondi*, No. 4:25-cv-04830, 2025 WL 3171331, at *7 (S.D. Tex. Nov. 13, 2025). Border Patrol Agents are immigration officers pursuant to implementing regulations. 8 C.F.R. § 1.2. Here, a Border Patrol Agent examined the Petitioner's case and issued her a Notice to Appear charging her with removability, which necessarily means that the Agent determined the Petitioner is not clearly and beyond a doubt entitled to be admitted.[2] [Dkt. 1-2 at 1]; *see also Singh v. Noem*, No. Civ 25-1110 JB/KK, 2026 WL 146005, at *35 (D.N.M. Jan. 20, 2026) (holding that the facts of the case showed that an immigration officer had determined that the petitioner was not clearly and beyond a doubt entitled to be admitted).

Thus far, only one circuit court of appeals—the Fifth Circuit—has issued a decision on the merits of the question at issue here,[3] and it reached the same

---

[2] If an immigration officer had determined that the Petitioner was clearly and beyond a doubt entitled to be admitted to the United States, then she would have been admitted and the Notice to Appear would not have been issued to commence a removal proceeding.

[3] The Seventh Circuit has addressed the issue, but not in a merits decision. The Seventh Circuit's decision in *Castanon-Nava v. Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025), was a motions panel decision that reached "preliminary" conclusions "based on the limited record" then before that court. *Id.* at 1064. The Seventh Circuit motions panel expressly noted that the court would later "address the appeal on the merits" after a chance for "more fulsome arguments and a more comprehensive record." *Id.* The Seventh Circuit has itself acknowledged that motions panel decisions "are summary in character, made often on a scanty record, and not entitled to the weight of a decision made after plenary submission." *Johnson v. Burken*, 930 F.2d 1202, 1205 (7th Cir. 1991). Its *Castanon-Nava* decision is thus "not binding precedent" on district courts within that circuit, let alone on this Court.

conclusion that this Court has reached.  In *Buenrostro-Mendez*, the Fifth Circuit held that aliens situated like the Petitioner are "deemed, by statute, to be applicants for admission pending the resolution of removal proceedings," so § 1225(b)(2)(A) applies to them.  166 F.4th at 502.  In turn, "Section 1225(b)(2) does not include any exception that permits the government to release detained aliens on bond."  *Id.* at 499.  In short, the Fifth Circuit, the first court of appeals to definitively address this issue, concluded that "the government's position is correct."  *Id.* at 498.

For these reasons, § 1225(b)(2)(A) requires that the Petitioner be subject to mandatory detention.  The plain language of the statute permits no other conclusion. *Id.* at 502 ("The text and context of § 1225 contradict the petitioners' reading of the statute.").  Nevertheless, the Petitioner resists this straightforward application of the statute on several grounds, each of which is unavailing.[4]

---

*Espinoza Hernandez v. Olson*, No. 25-cv-1670-bhl, 2026 WL 161509, at *6 (E.D. Wis. Jan. 21, 2026).  And even if *Castanon-Nava* were a decision of a *Sixth Circuit* motions panel, it is far from clear that it would be binding beyond being law-of-the-case:  The Sixth Circuit recently noted that it has "never explained the amount of deference due" to a motions panel decision and highlighted that "other circuits do not defer to similar interlocutory rulings."  *Kentucky v. EPA*, 123 F.4th 447, 547–58 (6th Cir. 2024).

[4] The Petitioner relies on *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018), at a few points in her briefing.  But *Jennings* addressed a very different question from the one at issue here.  True, *Jennings* touched on § 1225(b) and § 1226, suggesting the latter authorizes detention of "certain aliens already in the country."  *Id.* at 289.  But *Jennings* was about whether certain provisions of the INA could be read to establish "a statutory right to periodic bond hearings" for individuals detained under those provisions.  *Id.* at 286.  *Jennings* did not address—much less authoritatively dispose of—the question at issue in this case, which is whether the Petitioner's detention is governed by § 1225(b)(2)(A) or § 1226(a).  In fact, the underlying petitioner in *Jennings* was a lawful permanent resident—that is, he had already been lawfully "admitted" to the United States; he was not "an applicant for admission."  *Id.* at 289. The Petitioner here, by contrast, has not been admitted within the meaning of the statute.  Thus, the Petitioner's reliance on *Jennings* is misplaced.  If anything,

7

### 1. Mandatory detention under § 1225(b)(2)(A) is not limited to "arriving" aliens.

The Petitioner claims that § 1225(b) applies only to aliens who are "arriving" in the United States, not those who have been here for years, as she has. This argument is belied by the plain language of § 1225. To be sure, § 1225(b)(1) applies to aliens who are "arriving" in the United States for the first time. *See id.* § 1225(b)(1)(A)(i) ("If an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible . . ., the officer shall order the alien removed from the United States . . . ."). But § 1225(b)(2)(A) is the section that requires the Petitioner to be detained. And nothing in § 1225(b)(2)(A) limits its applicability to "arriving" aliens. In fact, the word "arriving" does not even appear in § 1225(b)(2)(A). As other courts have recognized, § 1225(b)(1) applies to "arriving aliens," but § 1225(b)(2) is a "catchall" provision that applies to all other aliens who have not been granted admission to the country. *See Mejia Olalde v. Noem*, No. 1:25-CV-00168-JMD, 2025 WL 3131942, at *3 (E.D. Mo. Nov. 10, 2025) (quoting *Jennings*, 583 U.S. at 287). The Petitioner falls within the latter group, so § 1225(b)(2) applies to her. *See Buenrostro Mendez*, 166 F.4th at 502 ("Presence without admission deems the petitioners to be applicants for admission" and therefore subject to § 1225(b)(2).).

### 2. The Petitioner is "seeking admission."

Next, seizing on the language in the second clause of § 1225(b)(2)(A), the Petitioner contends that mandatory detention under § 1225(b)(2)(A) cannot apply to

---

*Jennings* is more helpful to the Government's argument than the Petitioner's. *See Coronado v. Sec'y, Dep't of Homeland Sec.*, No. 1:25-cv-831, 2025 WL 3628229, at *9–*10 (S.D. Ohio Dec. 15, 2025).

her because she is not "seeking admission."  In other words, the Petitioner argues that § 1225(b)(2)(A) does not apply to all aliens who are "applicant[s] for admission," but instead applies only to those aliens who are "applicant[s] for admission" *and* who are also "seeking admission."  Her argument, however, misreads the statutory text. And it is nonsensical.  The "seeking admission" language is not additional limiting language.  It does not further narrow the class of aliens to whom § 1225(b)(2)(A) applies beyond those who are "applicant[s] for admission."  *See Buenrostro-Mendez*, 166 F.4th at 502 ("The everyday meaning of the statute's terms confirms that being an 'applicant for admission' is not a condition independent from 'seeking admission.'").

The Petitioner's argument would be compelling if the statutory language said that § 1225(b)(2)(A) applies "in the case of an alien who is an applicant for admission *and who is also seeking admission*."  But the statute says nothing of the sort.  Instead, it simply says that the statute applies "in the case of an alien who is an applicant for admission," *id.* § 1225(b)(2)(A), which the Petitioner plainly is.

Similarly, the Petitioner's argument would be compelling if the statutory text said that detention is mandatory "if the examining immigration officer determines that an alien *is* seeking admission *and also* is not clearly and beyond a doubt entitled to be admitted."  But, again, the statute says nothing of the sort.  The statute does not require the immigration officer to make *both* a determination that the alien in question is seeking admission *and* a determination that the alien is not clearly and beyond a doubt entitled to be admitted.  Instead, it requires only a determination that

9

the alien "is not clearly and beyond a doubt entitled to be admitted." *Id.* § 1225(b)(2)(A). The placement of the word "is" clearly demonstrates that the determination being made by the immigration officer concerns nothing more than the alien's entitlement to be admitted. Thus, the phrase "seeking admission" does not pertain to any element that must be found by the immigration officer before mandatory detention applies.

Rather than interpreting the "seeking admission" language as a separate requirement that must be met for § 1225(b)(2)(A) to apply, the more natural and logical reading is to view it as an appositive for the "applicant for admission" language. That is, the phrase "alien seeking admission" is simply another way of identifying the "alien who is an applicant for admission." *See Coronado*, 2025 WL 3628229, at *8 ("[T]he Court concludes that the more natural reading is that the phrase 'alien seeking admission' is just another way of saying 'alien who is an applicant for admission.'"). This is the most rational interpretation not only because—as explained above—the statutory text contains no language establishing those two clauses as independent requirements, but also because it makes no sense to think of an "applicant for admission" as anyone other than a person who is "seeking admission." What else would an applicant for admission be doing if not seeking admission? After all, "[t]o 'seek' is a synonym of to 'apply' for." *Mejia Olalde*, 2025 WL 3131942, at *3. Thus, one who is an "applicant for admission" is, by definition, "seeking admission." This means that because the Petitioner is deemed to be an "applicant for admission," she is likewise deemed to be "seeking admission."

10

Consider also the implications of the Petitioner's argument. If she is correct, then that means aliens who are present in the country without permission will be treated more favorably if they decline to take any measures to obtain permission than if they actively seek out permission to remain here. Those who refuse to do anything that would constitute "seeking admission" in the Petitioner's view would not be subject to mandatory detention, while those who do seek permission to stay in the United States would be subject to mandatory detention. That makes no sense. Rather, finding that the Petitioner falls within § 1225(b)(2) is more consistent with the plain text of the statute and the goals of the INA.

### 3. The novelty of the Government's interpretation and enforcement of § 1225(b)(2)(A) does not make it incorrect.

A common theme running throughout the Petitioner's arguments is the suggestion that the Government's interpretation of § 1225(b)(2)(A) cannot be correct because the law has never been enforced that way before. [Dkt. 1 at 8; Dkt. 7 at 13–15]. For example, the Petitioner cites a footnote from *Department of Homeland Security v. Thuraissigiam*, in which the Supreme Court noted the prior practice of treating noncitizens as applicants for admission only if they were "encountered within 14 days of entry without inspection and within 100 air miles of any U. S. international land border." 591 U.S. 103, 109 n.2 (2020) (quoting 69 Fed. Reg. 48879 (2004)). It might be true that the Government has not previously interpreted and enforced §§ 1225 and 1226 the way it is now, but that does not mean the Government is wrong. To the contrary, it appears that the Government previously interpreted and enforced the law incorrectly, and it has now corrected its prior mistakes.

11

The Petitioner seems to suggest that the Government should be bound by its prior interpretation, or that an agency can effectively re-write a statute by enforcing it contrary to its plain language for a long time, much the way one can adversely possess property simply by acting as the owner for a long time. But that is not how things work. Estoppel generally does not apply to the Government when it comes to law enforcement. *See Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 60–61 (1984) ("[I]t is well settled that the Government may not be estopped on the same terms as any other litigant" because public policy considerations let the Government alter its positions in ways private parties cannot.); *see also FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (The Government may change its interpretation of a statute when "the new policy is permissible under the statute," "there are good reasons for it," and "the agency *believes* it to be better."). And an agency cannot adversely possess the text of a statute. The Court's job is to interpret and apply the law as it was *written by Congress*, not as it was historically interpreted and enforced by agencies. Thus, while it might be factually true that the BIA and DHS have not previously interpreted the law as they do now, that point is legally irrelevant.

### 4. The use of a Form I-200 warrant to arrest the Petitioner does not render her detained pursuant to § 1226(a).

The Petitioner originally claimed that she was arrested without a warrant, but after the Respondents presented the warrant under which the Petitioner was arrested, [Dkt. 5-1], she now argues that the nature of the warrant requires her to be

detained under § 1226(a) instead of § 1225(b)(2).  The warrant at issue, a Form I-200

warrant, is a form document that includes the following heading:

> To: Any immigration officer authorized pursuant to sections 236 and 287
> of the Immigration and Nationality Act and part 287 of title 8, Code of
> Federal Regulations, to serve warrants of arrest for immigration
> violations

[*See, e.g.*, Dkt. 5-1].  The Petitioner latches onto the warrant's reference to "section[]

236."  [*Id.*].  According to the Petitioner, this necessarily renders her detention

pursuant to § 1226(a) and makes her eligible for release on bond.  Not so.  The mere

heading on a bureaucratic form cannot negate the plain language of a statute.

### B. The Petitioner's detention does not violate due process.

The Petitioner also contends that her detention violates her right to due

process under the Fifth Amendment to the United States Constitution.  It is true that

noncitizens like the Petitioner have due process rights even though they are present

in the country without ever having been admitted.  *Zadvydas v. Davis*, 533 U.S. 678,

693 (2001).  However, their right to due process goes no further than the process

Congress has chosen to give them.  *Thuraissigiam*, 591 U.S. at 138–39.  Here, the

Petitioner is receiving that process.  Thus, she has no valid due-process claim.

### C. The Court is not bound by *Maldonado Bautista*.

In a last-ditch effort, the Petitioner argues that she is a member of the

nationwide class in *Maldonado Bautista v. Santacruz* and must be released on bond

because of the declaratory and vacatur relief issued in that case.  [Dkt. 7 at 16–17

(citing *Maldonado Bautista,* No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861, at *11

(C.D. Cal. Nov. 20, 2025) (granting partial summary judgment); *Maldonado Bautista*,

13

No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403, at \*9 (C.D. Cal. Nov. 25, 2025) (certifying class))]. In *Maldonado Bautista*, the Central District of California ultimately concluded that all individuals who entered the United States without inspection, the nationwide class, are subject to § 1226(a) and entitled to a bond hearing. 2025 WL 3713987, at \*28–29, 32 (clarifying the court's prior orders that granted relief to the named petitioners and extended that relief to the entire class). So the Petitioner claims that the Central District's judgment binds this Court. But that ignores a few key points. First, the Central District made clear that it did not order "habeas relief for all class members across the nation." *Maldonado Bautista*, 2025 WL 3713987, at \*29. And that court specifically acknowledged that it "cannot order nationwide release or bond hearings for Bond Eligible class members, especially so to those confined outside [the Central District of California]." *Id.* at \*30. Additionally, the Central District held that "[t]o the extent Petitioners seek habeas relief for class members in immigration detention outside of this judicial district, the Court reiterates such an action would be *ultra vires*; there is no habeas jurisdiction to do so." *Id.* So the Central District of California plainly did not order any kind of relief that would bind this Court, which means that its opinions in *Maldonado Bautista* can have no more than persuasive authority. And because this Court finds those opinions unpersuasive, it declines to follow them.

## III. Conclusion

District Courts within this Circuit—and all over the nation—are wrestling with issues like those the Petitioner has raised. Indeed, another case in this District

14

arrived at a different outcome after thorough analysis of a similar petition. *See Moyao Roman v. Olson*, No. 2:25-cv-169-DLB-CJS, 2025 WL 3268403 (E.D. Ky. Nov. 24, 2025). While this Court appreciates the thoughtful and thorough analyses of the courts that have reached the opposite conclusion, it agrees with those that have been convinced that § 1225(b)(2)(A) compels mandatory detention for those noncitizens who are in the Petitioner's position. *See, e.g., Buenrostro-Mendez*, 166 F.4th 494; *Singh*, 2026 WL 416005; *Gomez Hernandez*, 2026 WL 31775; *Coronado*, 2025 WL 3628229; *P.B. v. Bergami*, No. 3:25-CV-2978-O, 2025 WL 3632752 (N.D. Tex. Dec. 13, 2025); *Montoya Cabanas v. Bondi*, No. 4:25-cv-04830, 2025 WL 3171331 (S.D. Tex. Nov. 13, 2025); *Altamirano Ramos v. Lyons*, No. 2:25-cv-09785-SVW-AJR, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025); *Mejia Olalde*, 2025 WL 3131942.[5]

For the foregoing reasons, Petitioner Audrey Sissa Akilimali's Petition for a Writ of Habeas Corpus, [Dkt. 1], is hereby **DENIED**.[6] A separate Judgment will be entered.

Signed this 17th day of March, 2026.



S. Chad Meredith, District Judge
United States District Court
Eastern District of Kentucky

---

[5] Many other district courts concur in well-reasoned opinions. *See, e.g., Rodriguez v. Noem*, No. 9:25-CV-320, 2025 WL 3639440 (E.D. Tex. Dec. 10, 2025); *Sandoval v. Acuna*, No. 6:25-CV-1467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025); *Vargas Lopez v. Trump*, No. 8:25CV526, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); *Chavez v. Noem*, No. 3:25-cv-02325-CAB-SBC, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025).

[6] One of the Respondents in this matter, James Daley, contends that he is not a proper Respondent in this case because he is not the Petitioner's legal or immediate custodian. [Dkt. 6 at 2–3]. Due to this Court's disposition of the Petition, it is not necessary for the Court to consider this issue.